Alvin CHAMP and Esther Perera, individually and on behalf of all others similarly situated, Plaintiffs–Appellees,

and

Mal Yerasi and Stephen B. Geer, Intervenors–Appellees, Cross–Intervenors/Appellants,

v.

The SIEGEL TRADING COMPANY, INC., Howard Siegel and Frank Mazza, Defendants–Appellants, Cross–Appellees.

Nos. 94–1619, 94–1631 and 94–1795.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1995.

Decided May 18, 1995.

---

Michael J. Freed, Ellyn M. Lansing, Much, Shelist, Freed, Denenberg & Ament, Terry Rose Saunders, Arthur T. Susman, Robert E. Williams (argued), Terrence Buehler, Susman, Buehler & Watkins, Chicago, IL, Don Lolli, Beckett & Steinkamp, Kansas City, MO, James A. McGurk, Dennis A. Bell, McConnell & Mendelson, Chicago, IL, for Alvin Champ in No. 94–1619.

Terry Rose Saunders, Arthur T. Susman, Robert E. Williams, Terrence Buehler, James A. McGurk, Dennis Bell, McConnell & Mendelson, Chicago, IL, for Esther Perera in No. 94–1619.

John W. Cooley, Evanston, IL (argued), Lane M. Gensburg, Dale, Jacobs & Gensburg, Chicago, IL, for Howard Siegel in No. 94–1619.

Marvin A. Miller, Patrick E. Cafferty, Miller, Faucher, Cherlow, Cafferty & Wexler, Chicago, IL, for Mal Yerasi and Stephen B. Geer, in No. 94–1619.

Michael J. Freed, Ellyn M. Lansing, Much, Shelist, Freed, Denenberg & Ament, Gary Sinclair, James A. McGurk, Dennis A. Bell, McConnell & Mendelson, Chicago, IL, for Alvin Champ in No. 94–1631.

Gary Sinclair, James A. McGurk, Dennis A. Bell, McConnell & Mendelson, Chicago, IL, for Esther Perera in No. 94–1631.

Steven J. Roeder, Hedlund & Hanley, Chicago, IL, John W. Cooley (argued), Evanston, IL, Thomas F. Burke, Chicago, IL, for Siegel Trading Co., Inc. and Frank Mazza in No. 94–1631.

Robert E. Williams, Susman, Buehler & Watkins, Chicago, IL (argued), Marvin A. Miller, Patrick E. Cafferty, Miller, Faucher, Cherlow, Cafferty & Wexler, Chicago, IL, for

Stephen B. Geer and Mal Yerasi, in No. 94–1631.

Michael J. Freed, Much, Shelist, Freed, Denenberg & Ament, Marvin A. Miller, Patrick E. Cafferty, Miller, Faucher, Cherlow, Cafferty & Wexler, Chicago, IL, for Alvin Champ in No. 94–1795.

Michael J. Freed, Much, Shelist, Freed, Denenberg & Ament, Marvin A. Miller, Miller, Faucher, Cherlow, Cafferty & Wexler, Chicago, IL, for Esther Perera, in No. 94–1795.

Steven J. Roeder, Hedlund & Hanley, Chicago, IL, for Frank Mazza and Siegel Trading Co., Inc. in No. 94–1795.

John W. Cooley, Evanston, IL (argued), Lane M. Gensburg, Dale, Jacobs & Gensburg, Chicago, IL, for Howard Siegel in No. 94–1795.

Terry Rose Saunders, Arthur T. Susman, Robert E. Williams (argued), Terrence Buehler, Susman, Buehler & Watkins, James A. McGurk, Dennis A. Bell, McConnell & Mendelson, Chicago, IL, for Mal Yerasi in No. 94–1795.

Terry Rose Saunders, Robert E. Williams, Terrence Buehler, James A. McGurk and Dennis Bell, McConnell & Mendelson, Chicago, IL, for Stephen B. Geer, in No. 94–1795.

Before RIPPLE, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

The first time we encountered this case we concluded that at that stage it was an unappealable interlocutory decision under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. After further proceedings in the district court, we now have before us the question of whether a district court has authority to certify an individual plaintiff as a class representative of other similarly aggrieved parties whose claims are subject to arbitration. We conclude that absent a provision in the parties' arbitration agreement providing for class treatment of disputes, a district court has no authority to certify class arbitration. We also conclude that we do not have jurisdiction to review a challenge by the original defendants to the district court's order in their favor.

## I.

The more detailed facts leading to the resolution of these appeals have been set out previously in *Perera v. Siegel Trading Co., Inc.*, 951 F.2d 780 (7th Cir.1992), familiarity with which is presumed. Thus we set out only those facts necessary for today's resolution. The plaintiff, Esther Perera, brought a class action complaint against the defendants, Siegel Trading Company, Inc., Frank Mazza, and Howard Siegel, claiming violations of the Commodity Exchange Act, RICO and various state laws. Perera filed a motion for class certification. But the district court never ruled on the motion because it ordered her to proceed to arbitration pursuant to the arbitration agreement between her and the defendants. Perera next filed a motion requesting that the court certify her as a class representative in the arbitration proceedings; the court granted this motion. The defendants moved for reconsideration, and the court revoked its prior order and held that it lacked authority to certify a class arbitration where the parties had not agreed to such a procedure in their arbitration agreement. In order to allow Perera to appeal this ruling, the court directed the clerk of the court to enter judgment on its order compelling arbitration pursuant to Rule 54(b). Recognizing that a Rule 54(b) judgment might be inappropriate, the district court also certified this ruling as an appealable interlocutory order under 28 U.S.C. 1292(b). The court's Rule 54(b) judgment was entered on November 7, 1990. In addition, a minute order was entered on December 7, 1990, directing that the entire case be dismissed with prejudice; however, no final judgment setting forth the court's disposition was entered on the docket.

On appeal, Perera asserted as a basis for jurisdiction that since the district court's order compelling arbitration was final, the court's other procedural decisions, such as its order refusing to certify class arbitration, were also final and hence reviewable. This court disagreed and held that the order compelling Perera to arbitrate was not a final appealable decision. We also held that the

district court's decision to enter a Rule 54 judgment did not transform an interlocutory decision into a final decision. *Perera,* 951 F.2d at 786. Because of this determination, we concluded that we were without jurisdiction to review the district court's order denying class arbitration and accordingly ordered Perera's appeal dismissed.

Shortly after the dismissal of her appeal, Perera settled her individual claim with the defendants. However, since the parties at that time did not request that it do so, the court did not formally enter a final judgment on Perera's claim pursuant to Rule 58. Later, on April 7, 1993, the parties appeared before the court on their agreed motion for entry of final judgment. The court was hesitant to grant the parties' motion. The court was under the belief that its order of December 27, 1990 had already disposed of the case. That being the case, the court expressed concern that an entry of final judgment might prejudice the rights of any putative class members who still had a possible claim. The court finally decided that it would allow the parties to file the agreed motion to "show apparently that you reached agreement among yourselves, so theoretically you have a contract." But the court declined to enter a final judgment.

On May 4, 1993, Perera renewed her motion for entry of final judgment. That same day, Mal Yerasi and Stephen Geer, who alleged to be members of the putative class of arbitration claimants, filed a motion seeking to intervene following the entry of final judgment so that they could appeal the court's previous order denying certification of a class for arbitration. Defendant Howard Siegel filed a motion opposing the entry of final judgment and the petition to intervene. Siegel apparently believed that the entire case had been finally resolved on or about November 18, 1992, by which time Perera had settled her claims which were the subject of arbitration. If that were so, then this rendered the intervenors' petition untimely, Siegel said. Alternatively, Siegel requested the district court to enter an order of dismissal with prejudice *nunc pro tunc* to November 18, 1992.

On February 25, 1994, the court denied Siegel's motions, granted Perera's motion for entry of final judgment in favor of defendants and against Perera dismissing her claims with prejudice, and granted Yerasi's and Geer's petition to intervene for purposes of appealing the court's denial of class certification. The court also entered a Rule 58 judgment indicating its disposition. On February 28, 1994, the clerk of the court entered the court's judgment on the docket.

Howard Siegel, Siegel Trading Co. and Mazza filed notices of appeal from the court's February 25, 1994 order. Howard Siegel's appeal was docketed as No. 94–1619; Siegel Trading Co.'s and Mazza's appeal was docketed as No. 94–1631. Intervenors Yerasi and Geer filed a notice of appeal which was docketed as No. 94–1795. On April 6, 1994, this court issued an order requiring defendants to show cause why, as prevailing parties, their appeals should not be dismissed for lack of appellate jurisdiction. Following briefing, this court issued an order requiring that defendants' jurisdictional issues be briefed and heard along with the merits of the intervenors' appeal.

## II.

### A. Jurisdictional Questions

■ We begin with the question of our jurisdiction over both appeals. First are the defendants' appeals, docketed as Nos. 94–1619 & 1634, which consist of various challenges to the district court's minute order of February 25, 1994 entering judgment in their favor. The defendants ultimately won. Since they appear not to be aggrieved from the district court's judgment, they should not be able to appeal from it. *Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980); 9 Moore's *Federal Practice* ¶ 203.06 at 3–26.

The defendants argue that they *have* been aggrieved by the district court's "redundant" judgment because it opened up the possibility for Yerasi and Geer to intervene in a case which the defendants believed to have been previously closed. The defendants rely on *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977),

where the Supreme Court set out the procedures a putative member of a class must follow in order to intervene in a class action for purposes of appealing the district court's denial of class certification. In *McDonald*, the Court held that a member of a putative class of aggrieved persons could appeal a district court's denial of class certification by intervention, after the entry of final judgment. The adverse class determination would be appealable by the intervenors if they filed the notice of appeal within the statutory time for taking an appeal. Defendants maintain that the proper time for filing the petition to intervene occurred when the district court entered a final judgment from which the time for appeal started to run. That took place either as early as the December 27, 1990 minute order disposing of the entire case with prejudice, or, no later than November 18, 1992, by which time the defendants had settled Perera's claims. With no petition to intervene filed after either of these dates, defendants concluded that any members of the putative class who were potential intervenors had foregone the opportunity to challenge the district court's denial of class certification. But when the court entered its order of February 25, 1994, dismissing the plaintiffs' case with prejudice and entering judgment in favor of the defendants pursuant to Rule 58, defendants insist the court erroneously created a new window of opportunity for putative class members to intervene. Defendants now claim that but for the court's alleged error, there would be no appeal; thus they were adversely impacted and have a right to appeal from a judgment ostensibly entered in their favor.

Defendants are mistaken, because at no time before February 25, 1994 did the court enter what could properly be considered a "final judgment" for the purposes of *McDonald*. When the district court entered its December 27, 1990 order dismissing the cause with prejudice, the court believed that it had resolved the entire case. But that belief was premised upon the assumption that the order compelling Perera to arbitra-

tion was a final decision. This court rejected that assumption in *Perera*. We held that the order was nonappealable, and thus not final, and that appealability was not altered by the entry of a Rule 54(b) judgment. *See Perera*, 951 F.2d at 786.

That leaves us with the district court's actions of November 18, 1992. On that date, the defendants appeared before the district court on their motion to either enforce the parties' settlement agreement or, in the alternative, to dismiss Perera's claims with prejudice. The court considered the case closed and asked the defendants if they wished to withdraw their motion. The defendants did not inform the court that our *Perera* decision seriously undermined any assertion that the case was closed. Instead, the defendants agreed with the court's conclusion and withdrew their motion. The court's minute order entered that same date provides: "Defendants, the Siegel Trading Company, Inc. and Frank Mazza's motion to enforce settlement agreement or to dismiss with prejudice is withdrawn." As there is nothing in the language of this order resembling a "decision" signifying the end of the litigation, it cannot serve as the date from which the time for taking an appeal began to run.

But more importantly, even had the district court taken steps on that date to terminate the litigation, the absence of a Rule 58 judgment renders irrelevant the defendants' hindsight argument regarding just when finality was achieved. This court in *Otis v. City of Chicago*, 29 F.3d 1159 (7th Cir.1994) (*en banc*), recently reiterated the long-standing rule that even when the district court enters a final decision from which a party *could* appeal, the party " 'safely may defer the appeal until Judgment Day if that is how long it takes to enter the [Rule 58 judgment].' " *Otis*, 29 F.3d at 1167 (quoting *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987)).[1] That being the case, Yerasi and Geer, as intervenors under *McDonald*, would step in the shoes of the original plaintiff for purposes of challenging the court's denial of

---

**1.** It is for this reason that defendant Siegel's challenge to the district court's decision denying his request for an order *nunc pro tunc* dismissing the case with prejudice as of November 18, 1992

is beside the point. There not being an entry of final judgment as of that date, under *Otis* there would not be an obligation to take an appeal.

class certification. *Otis* would allow them to wait an indefinite period of time until the court entered a formal judgment pursuant to Rule 58. Only then would they be required to file their petition to intervene. All told, we are left with nothing more than the defendants' subjective belief that a final decision had been entered prior to February 25, 1994. Because this belief was erroneous, the defendants' assertion of harm flowing from the court's final judgment is baseless. The defendants' appeals are dismissed.

■ The next jurisdictional question before us involves the defendants' challenge to our jurisdiction to entertain the intervenors' cross-appeal, docketed as No. 94–1795. On this we can be brief. The intervenors had the same attorney as Perera. The defendants' chief complaint is that once Perera settled her individual claims with the defendants, the intervenors surely knew that she would no longer be leading the challenge to the district court's denial of class certification. It was at that point, defendants claim, that the intervenors were required to file their petition in order to take a *McDonald* appeal of the court's order.

Not so. First there must be the entry of final judgment which makes an adverse class determination appealable. This gives members of the putative class the opportunity to pursue the denial of class determination in the event it becomes clear that the named class representative will not do so. *See McDonald*, 432 U.S. at 394, 97 S.Ct. at 2469–70; *see also Roe v. Town of Highland*, 909 F.2d 1097, 1099 (7th Cir.1990). Until that point, it would have been pointless for any member of the putative class to intervene "for immediate appeal of the class certification was impossible." *Roe*, 909 F.2d at 1099. Consequently, the intervenors followed the correct procedure under *McDonald* in filing their petition when they did. We thus have appellate jurisdiction to consider the merits of their appeal.

*B. The Intervenors' Cross–Appeal: Class Arbitration?*

■ In their cross-appeal, the intervenors challenge the court's determination that it lacked authority to certify their claims for class arbitration. The intervenors acknowledge that section 4 of the FAA requires that district courts enforce arbitration agreements "in accordance with the terms of the agreement." 9 U.S.C. § 4. They further concede that there is nothing in these written arbitration agreements with the defendants that expressly provides for class arbitration. However, the intervenors maintain that because an order compelling class arbitration would not contradict the terms of an agreement that is silent on the issue of class arbitration, such an order would still be "in accordance with" those terms and therefore would not be not barred by section 4 of the FAA. For authority, the intervenors direct us to Fed.R.Civ.P. 81(a)(3), which provides that in proceedings under the FAA, the federal rules apply to the extent not provided for in the FAA. Because the FAA is silent on the issue of class arbitration, intervenors argue that the district court had authority under Fed.R.Civ.P. 23, as incorporated through Rule 81(a)(3), to order these individual arbitration claims to proceed on a class basis.

To unravel this somewhat tangled argument, we need to examine the intervenors' first premise: that since an order compelling class arbitration *does not contradict* the terms of the parties' arbitration agreement, it is *in accordance with* those terms as required by section 4 of the FAA. The intervenors have not cited, nor have we found, a single appellate court decision addressing this issue. However, several other circuits have addressed whether a district court has the authority to apply Fed.R.Civ.P. 42(a) and order consolidated arbitration where the parties' arbitration agreement is silent on the matter. The Second, Fifth, Sixth, Eighth, Ninth and Eleventh Circuits have held that absent an express provision in the parties' arbitration agreement, the duty to rigorously enforce arbitration agreements "in accordance with the terms thereof" as set forth in section 4 of the FAA bars district courts from applying Rule 42(a) to require consolidated arbitration, even where consolidation would promote the expeditious resolution of related claims. *See, e.g., Government of United Kingdom v. Boeing Co.*, 998 F.2d 68,

**275**

74 (2d Cir.1993) (holding that "[a] district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation"); *American Centennial Ins. v. National Cas. Co.*, 951 F.2d 107, 108 (6th Cir.1991) (holding that "a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation"); *Baesler v. Continental Grain Co.*, 900 F.2d 1193, 1195 (8th Cir.1990) (holding that "absent a provision in an arbitration agreement authorizing consolidation, a district court is without power to consolidate arbitration proceedings"); *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282 (11th Cir.1989) (per curiam) (holding that "the sole question for the district court is whether there is a written agreement among the parties providing for consolidated arbitration"); *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 150 (5th Cir.1987) (same); *Weyerhaeuser Co. v. Western Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir.) (same), *cert. denied*, 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984).[2] The Second Circuit's decision in *United Kingdom* provides one of the best explanations of why this is so. The Second Circuit examined recent decisions from the Supreme Court discussing the FAA, particularly, *Volt Info. Sciences v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 103 L.Ed.2d 488 (1989); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), and *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In light of those decisions the court concluded that the overriding goal of the FAA was to place private arbitration agreements on the same footing as other contracts negotiated between private parties. *See United Kingdom*, 998 F.2d at 72. The Second Circuit went on to observe that in light of the Court's decisions, a district

court's chief concern under the FAA is to enforce the parties' arbitration as they wrote it, "*despite* possible inefficiencies created by such enforcement." *Id.* at 72 (emphasis in original).

This rational is entirely consistent with statements from our own decisions. For example, in *Universal Reinsurance Corp. v. Allstate Ins. Co.*, 16 F.3d 125 (7th Cir.1994), this court was asked to excuse a party's failure to name its own arbitrator. Such failure, according to the express terms of the parties' arbitration agreement, resulted in the matter being decided by arbitrators selected entirely by the party's adversary. We rejected the invitation to mend an apparent error, noting that "[t]o substitute our own notion of fairness in place of the explicit terms of [the parties'] agreement would deprive them of the benefit of their bargain just as surely as if we refused to enforce their decision to arbitrate." *Universal Reinsurance Corp.*, 16 F.3d at 130. We have a similar situation here. The parties' arbitration agreement makes no mention of class arbitration. For a federal court to read such a term into the parties' agreement would "disrupt[ ] the negotiated risk/benefit allocation and direct[ ] [the parties] to proceed with a different sort of arbitration." *New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 10 (Selya, J., dissenting). We find no meaningful basis to distinguish between the failure to provide for consolidated arbitration and class arbitration. We thus adopt the rationale of several other circuits and hold that section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter.

■■■ The intervenors complain that this conclusion does not give adequate consideration to a district court's authority under Rule 81(a)(3) to apply Rule 23 and order these individual arbitration disputes to proceed on a class basis. Rule 81(a)(3) provides,

---

2. The First Circuit has held that a district court may order consolidated arbitration, even though such action is not expressly authorized in the parties' agreement, where the underlying state arbitration law specifically authorizes consolidated arbitration. *See New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 5 (1st Cir.

1988), *cert. denied*, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989). The intervenors do not argue that Illinois' arbitration law authorizes class arbitration, so we need not determine whether we would follow the First Circuit's holding, although we do have our doubts about its continued validity.

in pertinent part, that "[i]n proceedings under Title 9, U.S.C., relating to arbitration . . . [the Federal Rules of Civil Procedure] apply only to the extent that matters of procedure are not provided for in those statutes." Fed. R.Civ.P. 81(a)(3). The intervenors submit that because the FAA is silent on the matter of class arbitration, Rule 81(a)(3) allows a district court to apply Rule 23 and enter an order certifying class arbitration in appropriate circumstances.

We reject the intervenors' reading of Rule 81(a)(3). First of all, Rule 81(a)(3) says that the Federal Rules fill in only those procedural gaps left open by the FAA. But as explained above, section 4 of the FAA requires that we enforce an arbitration agreement according to its terms. Such terms conceivably could consist of consolidated or even class arbitration. The parties here did not include in their agreement an express term providing for class arbitration. Thus, one could say that through the proper application of 9 U.S.C. § 4 the FAA has already provided the type of procedure to be followed in this case, namely, non-class-action arbitration. *See also In Re Coastal Shipping and Southern Petroleum,* 812 F.Supp. 396, 402 (S.D.N.Y.1993) (discussing the interplay between Rule 81(a)(3) and Rule 42(a) and remarking that "[a]lthough Rule 42(a) provides for consolidation of actions involving common questions of law and fact, § 4 of the Arbitration Act forbids the enforcement of an arbitration agreement other than in accordance with its terms. Thus, absent an agreement to consolidate disputes, federal courts are powerless to compel consolidation."); *Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510, 1514 (S.D.N.Y.1985) (also noting the interplay between Rule 81(a)(3) and Rule 42(a) and stating that "9 U.S.C. § 4 precludes the use of the Federal Rules in a manner that would alter the terms of the arbitration agreement[ ].").

But more to the point, we still could not accept the intervenors' assertions because by its language Rule 81(a)(3) only applies to *judicial* proceedings under the FAA. *See Government of United Kingdom,* 998 F.2d at 73; 4 Charles A. Wright & Arthur A. Miller, *Federal Practice and Procedure* § 1015 at 66–67 (1987); 7 Moore's *Federal Practice* ¶ 81.05[7] at 81–55 (2d ed. 1994). These include: a stay of a suit in which an issue involved is referable to arbitration (9 U.S.C. § 3); a petition for an order compelling arbitration (9 U.S.C. § 4); an application for the appointment of arbitrators or an umpire (9 U.S.C. § 5); an application for the confirmation of an arbitration award (9 U.S.C. § 9); an application for vacating an arbitration award (9 U.S.C. § 10) and an application for modifying or correcting an arbitration award (9 U.S.C. § 11). So, for example, in a proceeding under section 4, which consists of a preliminary determination on whether the parties' intended an issue to be referred to arbitration, a district court could order discovery pursuant to Fed.R.Civ.P. 26 on matters relevant to the existence of an arbitration agreement. *See* 7 Moore's *Federal Practice, supra* at 81–56. But nothing in the language of Rule 81(a)(3) purports to apply the Federal Rules of Procedure to the actual proceedings on the merits before the arbitrators, which are normally regulated by the American Arbitration Association's Commercial Arbitration Rules. 4 Wright & Miller, *supra* at 67.[3] As the Fourth Circuit has explained it: "[a]n arbitration hearing is not a court of law. When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial." *Burton v. Bush,* 614 F.2d 389, 390 (4th Cir.1980) (citations omitted); *see also Great Scott Supermarkets, Inc. v. Local No. 337, Teamsters,* 363 F.Supp. 1351, 1354–55 (E.D.Mich.1973) (refusing to apply the Federal Rules of Civil Procedure or the Federal Rules of Evidence to the actual arbitration proceedings). One of those "procedural niceties" is the possibility of pursuing a class action under Rule 23. Therefore, absent an express provision in the

---

**3.** This distinction between judicial proceedings under the FAA and proceedings before the arbitration panel is entirely consistent with the result of this court's decision in *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.,* 639 F.2d 386 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981), where we upheld the district court's use of Fed.R.Civ.P. 12(b) and 56 in a judicial proceeding to confirm an arbitration award under 9 U.S.C. § 9.

parties' arbitration agreement providing for class arbitration, Rule 81(a)(3) does not provide a district court with the authority to reform the parties' agreement and order the arbitration panel to hear these claims on a class basis pursuant to Rule 23.[4]

Finally, the intervenors complain that various inefficiencies and inequities will result from denying them the opportunity to pursue arbitration on a class basis against these defendants. While that may or may not be the case, as already noted above in our discussion of *Government of United Kingdom,* the Supreme Court has repeatedly emphasized that we must rigorously enforce the parties' agreement as they wrote it, "even if the result is 'piece-meal' litigation." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985). We are thus obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis.

## III.

Section four of the FAA requires that district courts "enforce the parties' bargain as they wrote it—and nothing more." *Keystone Shipping Co.,* 855 F.2d at 10 (Selya, J., dissenting). Since the parties' arbitration agreement does not expressly provide for class arbitration, the district court correctly concluded that it was prohibited from reading such a procedure into these arbitration agreements. Moreover, Rule 81(a)(3) only applies to judicial proceedings under the FAA, not to the actual proceedings before

the arbitration panel. This means that absent an express provision in the arbitration agreement requiring class arbitration, the district court would not be able to invoke Rule 81(a)(3) as a source of authority to certify a class for arbitration under Rule 23. Consequently, the order of the district court denying class certification is Affirmed. Lastly, for the reasons set forth above, the defendants have failed to demonstrate that they were aggrieved by the district court's order entering final judgment in their favor. Therefore, the defendants' appeals, Nos. 94–1619 & 94–1631, are Dismissed for lack of appellate jurisdiction.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

If the Federal Arbitration Act authorized the federal courts to certify a class for arbitration purposes, then I would see little reason not to do so in this case. I attach less significance than the majority to the fact that the parties have not spoken to this subject in the arbitration agreement they signed. Class certification is a matter that parties rarely, if ever, speak to in their contracts, even when they have made other provisions for the resolution of potential disputes. And, practically speaking, I doubt that class certification is something that corporate defendants who draft these agreements for their clients to sign would ever consent to in writing; they typically have far more to gain by forcing unhappy customers to bear the expense of arbitrating individually. *See Keating v. Superior Court of Alameda County,* 31

4. In their reply brief, the intervenors suggest that the district court could order class arbitration pursuant to its inherent equitable powers. There is no doubt that a district court possesses certain inherent power "to control and manage its docket." *Strandell v. Jackson County, Ill.,* 838 F.2d 884, 886 (7th Cir.1987). But as *Strandell* went on to observe:

> That power must, of course, be exercised in a manner that is in harmony with the Federal Rules of Civil Procedure. Those rules are the product of a careful process of study and reflection designed to take due cognizance both of the need for expedition of cases and the protection of individual rights. That process, set forth in the Rules Enabling Act, 28 U.S.C. § 2072, also reflects the joint responsibility of the legislative and judicial branches of govern-

ment in striking the delicate balance between these competing concerns. Therefore, in those areas of trial practice where the Supreme Court and the Congress, acting together, have addressed the appropriate balance between the needs for judicial efficiency and the rights of the individual litigant, innovation by the individual officer must conform to that balance. *Id.* at 886–87 (citations and footnote omitted).

In short, Congress and the Supreme Court have already determined that district courts have authority to apply the Federal Rules of Civil Procedure only to judicial proceedings under the FAA, not to the arbitration proceedings. Thus, a district court could not rely on its inherent equitable powers to devise a method whereby it could compel class arbitration before an arbitration panel.

Cal.3d 584, 183 Cal.Rptr. 360, 375, 645 P.2d 1192, 1207 (1982), *rev'd on other grounds sub nom. Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Thus, I do not view silence in the arbitration agreement as a bar to class certification. *See New England Energy Inc. v. Keystone Shipping Co.,* 855 F.2d 1, 5 (1st Cir.1988), *cert. denied,* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989). I do agree, however, that class-based arbitration may not be ordered absent some statutory authority to do so. The Arbitration Act offers no such license, and as the majority has noted, the Federal Rules of Civil Procedure, including Rule 23, are applicable only to judicial proceedings *related* to arbitration, not the arbitration itself. *Ante* at 276. Thus, unless and until Congress authorizes class certification for purposes of arbitration, we are without the authority to impose it.