**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2037
_____

CHESAPEAKE APPALACHIA L.L.C.,

v.

SCOUT PETROLEUM, LLC; SCOUT PETROLEUM II, LP,
                                        Appellants
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-14-cv-00620)
District Judge: Honorable Matthew W. Brann
_____

Submitted under Third Circuit L.A.R. 34.1(a)
December 11, 2017

Before:  RESTREPO, GREENBERG, and FISHER, *Circuit Judges*

(Filed: March 13, 2018)

_____

OPINION*
_____

RESTREPO, *Circuit Judge*

---

* This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

In this declaratory judgment action, defendants, Scout Petroleum, L.L.C. and Scout Petroleum II, L.P. (collectively "Scout"), appeal the District Court's Order granting the motion of plaintiff, Chesapeake Appalachia, L.L.C. ("Chesapeake"), for summary judgment on Count II ("clause construction question") of Chesapeake's 2-count Complaint and denying Scout's cross-motion to dismiss the Complaint.[1] Since we agree with the District Court that the contracts at issue do not permit class arbitration, only what is called individual or bilateral arbitration, we affirm.

## I.[2]

Chesapeake entered into various oil and gas leases with landowners in several northeastern Pennsylvania counties wherein Chesapeake is the "Lessee," and the "Lessor" is (or originally was) the respective landowner. Scout subsequently purchased the rights to several of these leases ("the Leases"), and has been receiving royalties from the sale of natural gas from Chesapeake pursuant to the Leases. The Leases include the following arbitration provision:

> In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with

---

[1] On Jan. 5, 2016, this Court affirmed the District Court's Order granting Chesapeake's motion for summary judgment on Count I and denying Scout's motion to dismiss. *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016). We found that the availability of class arbitration constituted a "question of arbitrability" to be decided by the courts – and not the arbitrators in this case. *Id.* at 748.

[2] We write exclusively for the parties and therefore set forth only those facts that are necessary for our disposition.

2

the rules of the American Arbitration Association. All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

(JA 44.)[3]

On March 17, 2014, Scout filed an arbitration demand against Chesapeake on behalf of itself and similarly-situated lessors, alleging that Chesapeake paid insufficient royalties. In its answer to the arbitration demand, Chesapeake objected to class arbitration on the grounds that it did not agree to resolve disputes arising out of the Leases by class arbitration.

On April 1, 2014, Chesapeake filed this declaratory judgment action seeking a Judgment declaring that the Leases do not permit class arbitration.[4] Following this Court's affirmance of the District Court's ruling on the question of arbitrability, *see supra* note 1, the District Court granted summary judgment in favor of Chesapeake on the clause construction question and denied Scout's cross-motion to dismiss. This appeal followed.

**II.**[5]

---

[3] The parties have stipulated that Pennsylvania law governs the Leases.

[4] Although the arbitration panel decided that the Leases authorized it to make the decision about arbitrability, following briefing, the District Court vacated the arbitration panel's clause construction decision.

[5] The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C § 1291.

3

The Supreme Court has made clear that "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Here, the parties do not dispute that the Leases do not expressly permit class arbitration. The dispute instead is whether, despite this silence with regard to an express agreement to permit class arbitration, the Leases can still be read to "agree" to class arbitration.

This Court has noted that "[s]ilence regarding class arbitration generally indicates a prohibition against class arbitration." *Quilloin v. Tenet Health Sys. Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012). Several other Circuits, including the Fifth, Sixth, Seventh, and Eighth, have likewise stated that "silence" in an agreement regarding class arbitration generally indicates that it is not authorized by the agreement. *See, e.g., Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643-44 (5th Cir. 2012) (finding that silence in an agreement does not "constitute[] consent to class arbitration" (internal quotation marks omitted)), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728-29 (8th Cir. 2001) (holding that the district court did not err by compelling individual, rather than class, arbitration because the relevant agreements were silent as to class arbitration); *Champ v. Siegel Trading Co.*, 55 F.3d 269,

4

275 (7th Cir. 1995) (stating "the [Federal Arbitration Act] forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter.").

Scout contends, however, that the absence of explicit language authorizing class arbitration in a contract is not fatal to class claims because such authorization can be implied. In other words, Scout argues that if an arbitration clause reflects the parties' intent to agree to class arbitration, then it should be permitted, even where class arbitration is not explicitly mentioned anywhere in the contract.

Here, assuming that class arbitration may be permitted without express authorization in a contract, we find this arbitration clause does not imply the parties' intent to authorize class arbitration. The clause specifically authorizes arbitration "[i]n the event of a disagreement *between Lessor and Lessee . . .*,"[6] (JA 44 (emph. added)), and Scout fails to point to anything in the contract that would suggest an implicit intent of the parties to permit class arbitration.[7]

---

[6] Thus, when the clause subsequently (in the same sentence) refers to "the resolution of all *such* disputes," it is clearly referring to the aforementioned "disagreement[s] between Lessor and Lessee."

[7] Scout's brief relies heavily on *Dickler v. Shearson Lehman Hutton, Inc.*, 596 A.2d 860 (Pa. Super. 1991), in support of the contention that the arbitration clause here implies an agreement to authorize class arbitration. However, among other things, in addition to the fact that *Dickler* was decided by a Pennsylvania intermediate appellate court nearly 19 years before *Stolt-Nielsen*, the arbitration clause in *Dickler* is distinguishable from the relevant clause in this case. *See id.* at 861 (where clause refers to "[a]ny controversy . . . relating . . . to transactions . . .). Similarly, *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215 (3d Cir. 2012), *aff'd*, 569 U.S. 564 (2013), which Scout also points to as support in

"[C]lass-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen*, 559 U.S. at 685. As the Supreme Court pointed out, the "crucial differences" between bilateral and class arbitration "are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 687. Here, because the arbitration clause neither explicitly nor implicitly authorizes class arbitration we affirm.

---

its brief, is distinguishable from this case. Among other things, the relevant clause in *Sutter* clearly reflected the parties' agreement that "[n]o civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration . . . with one arbitrator." *Id.* at 217.

6