**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

IN THE MATTER OF THE
APPLICATION OF DEIULEMAR
COMPAGNIA DI NAVIGAZIONE S.P.A.
FOR THE PERPETUATION OF CERTAIN
EVIDENCE,
Petitioner-Appellee,

v.

M/V ALLEGRA,
Respondent,

No. 99-1378

v.

PACIFIC ETERNITY, S.A.; GOLDEN
UNION SHIPPING CO. S.A.,
Movants-Appellants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Joseph H. Young, Senior District Judge.
(MC-99-78)

Argued: September 24, 1999

Decided: December 6, 1999

Before WILKINSON, Chief Judge, WILLIAMS, Circuit Judge, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed and remanded by published opinion. Judge Williams wrote
the opinion, in which Chief Judge Wilkinson and Senior Judge Ham-
ilton joined.

_____

## COUNSEL

**ARGUED:** Denham Arthur Kelsey, HUNTON & WILLIAMS, Norfolk, Virginia, for Appellants. George H. Falter, III, OBER, KALER, GRIMES & SHRIVER, P.C., Baltimore, Maryland, for Appellees.
**ON BRIEF:** Carl D. Gray, HUNTON & WILLIAMS, Norfolk, Virginia, for Appellants. Manfred W. Leckszas, OBER, KALER, GRIMES & SHRIVER, P.C., Baltimore, Maryland, for Appellees.

_____

## OPINION

WILLIAMS, Circuit Judge:

Deiulemar Compagnia Di Navigazione (Deiulemar) filed a petition to perpetuate testimony in the United States District Court for the District of Maryland pursuant to Federal Rule of Civil Procedure 27. Deiulemar sought to preserve evidence of the condition of a ship it chartered from Pacific Eternity and Golden Union Shipping Co. (collectively, Pacific Eternity) that was undergoing repairs and was soon scheduled to leave United States waters. Deiulemar, which expected to file an arbitration action against Pacific Eternity in London pursuant to its Charter Party agreement, asserted that "extraordinary circumstances" justified the district court's intervention in preserving evidence that was crucial to its arbitration case and unable to be recreated. Pacific Eternity responded that the district court lacked subject matter jurisdiction over the petition because Deiulemar could not satisfy the requirements of Rule 27. Pacific Eternity, citing Federal Rule of Civil Procedure 81, argued that it was inappropriate for the court to involve itself in an arbitrable dispute and that the proper forum for Deiulemar's discovery petition was the London arbitration panel. The district court granted Deiulemar's Rule 27 petition and permitted Deiulemar to inspect and perpetuate the evidence of the ship's condition. It then sealed the evidence pending appeal. For the reasons stated below, we affirm the district court's exercise of jurisdiction to preserve evidence in aid of arbitration in the extraordinary circumstances presented and remand with instructions to transfer the sealed evidence to the arbitrator in the now-pending London arbitration proceeding.

2

I.

On June 4, 1997, Deiulemar time-chartered the M/V Allegra from Pacific Eternity. The written Charter Party agreement required, among other things, that Pacific Eternity maintain the "hull, machinery and equipment in a thoroughly efficient state." (J.A. at 7.) The agreement also specified that the vessel would maintain a guaranteed speed of twelve to thirteen knots. The agreement gave Deiulemar the right to hold "superficial inspection" of the vessel[1] and also contained an arbitration provision that required "any dispute aris[ing] between Owners and the Charterers" to be referred to arbitration in London. (J.A. at 9-10, 24.)

Deiulemar began its voyage from Australia to the United States, with its final port in Baltimore, Maryland. During this voyage, Deiulemar discovered that the ship was traveling below the guaranteed speed, at just seven plus knots. At Richards Bay, South Africa, the ship encountered some mechanical problems and had to stop for repairs. On February 12, 1999, the ship entered the Chesapeake Bay and reached the Port of Hampton Roads. The U.S. Coast Guard inspected the vessel and discovered several mechanical problems. Citing safety concerns, the Coast Guard detained the vessel until the Owners could repair a lengthy list of problems. [2] As a result, the Allegra spent several weeks in anchorage at Hampton Roads undergoing inspection and repairs. Finally, after Pacific Eternity addressed many of the more critical deficiencies, the Coast Guard released the Allegra.[3] On March 6, 1999, the ship proceeded to Baltimore to

_____

[1] Clause 69 of the Charter Party agreement provided that Deiulemar would have the right to "superficial inspection prior to delivery and also at any time of this Charter. Owners and Master shall give every facility and assistance." (J.A. at 24.)
[2] For example, the Coast Guard identified "[e]xcessive fuel oil leaks in way of main fuel oil heater"; "oil leaks in way of #2 main diesel engine turbo charger"; "[f]uel oil, lube oil, and cooling water leaks on both ship's service diesel generators"; and "numerous deficiencies in the machinery spaces which created an immediate hazard to the crew, the ship and the environment." (J.A. at 79-80.) The Coast Guard also noted that "[t]he lack of maintenance, lack of repair, and a lack of spare parts was clearly evident." (J.A. at 80.)
[3] According to the Coast Guard record of deficiencies, the Coast Guard required Pacific Eternity to repair seven of the most critical deficiencies

3

unload its cargo and complete further repairs. According to Deiulemar, Pacific Eternity intended to install new cylinder heads to the main engine in Baltimore.

On March 8, 1999, while the ship was in port in Baltimore, Deiulemar dispatched Captain Heiner Popp, a marine expert, to inspect the vessel.[4] Deiulemar believed that Pacific Eternity had breached the Charter Party agreement by failing to maintain the Allegra's guaranteed speed of twelve knots throughout the voyage. Deiulemar anticipated that Captain Popp would determine that engine problems were the cause of the ship's slow pace of travel. Pacific Eternity denied Captain Popp access to the ship and ordered him off the vessel. Pacific Eternity asserts that marine growth on the hull, and not engine problems, was the cause of the ship's subpar speed.

On March 9, 1999, Deiulemar filed a Rule 27 petition to perpetuate testimony with the United States District Court for the District of Maryland.[5] The petition stated that "Petitioner expects to be a party to an action cognizable in the Courts of the United States, either to compel arbitration, seek security or to enforce an award." (J.A. at 3.) Deiulemar stated that it sought to perpetuate the evidence "to determine the nature and extent of Petitioner's claim for a breach of the attached [Charter Party agreement]." (J.A. at 5.) In its supporting memorandum, Deiulemar argued that "extraordinary circumstances" warranted Rule 27 discovery because crucial evidence-- the ship's engine -- was scheduled for substantial repair, and that, as a result, "[t]he circumstances and conditions extant today can never be recre-

_____

before the Allegra could leave Hampton Roads. The seven remaining deficiencies identified by the Coast Guard were scheduled to be repaired by March 13, 1999.

**4** Deiulemar asserts that clause 69 of the agreement entitled it to inspect the vessel.

**5** Perpetuation of testimony includes the inspection of documents and things. See Martin v. Reynolds Metals Corp., 297 F.2d 49, 56 (9th Cir. 1961). For the sake of convenience, we refer to"testimony" and "evidence" interchangeably in the context of Rule 27 because Deiulemar is perpetuating the evidentiary basis of expert testimony of the ship's condition before completion of repairs.

4

ated." (J.A. at 35.) The supporting memorandum also asserted that the Coast Guard's actions in detaining the vessel at Hampton Roads "raise[d] the inference, at least, that the Allegra's speed deficiencies are engine, and not hull, related." (J.A. at 34.)

On March 10, 1999, Pacific Eternity filed a motion to dismiss the Rule 27 petition. Along with its motion to dismiss, Pacific Eternity filed a sworn declaration from English legal counsel. The declaration, which describes the English rules of arbitration, suggests that "[a]ll of the information sought in Deiulemar's Rule 27 petition could be requested through the arbitration process." (Appellant's Br. at 7.) On the same day, Deiulemar initiated arbitration proceedings in London, as required by the Charter Party agreement. Neither party filed a motion to stay this action pending arbitration.

On March 16, 1999, the district court heard arguments from both parties during a conference call. After the call, the court issued an order granting Deiulemar's Rule 27 petition. The order, which the district court adopted substantially from Deiulemar, does not contain any factual findings. Rather, it simply states that "upon good cause shown," Captain Popp and his staff could inspect the vessel, observe repairs, and copy documents from the ship. (J.A. at 110.) The order also states, in a handwritten note added at the end of the order, that "[a]ll information and records produced . . . shall be held in camera pending any appeal." (J.A. at 111.)

Pursuant to the district court's order, Captain Popp and his staff inspected the Allegra. They observed repairs, collected a large set of documents, took photographs, and wrote inspection reports describing the Allegra's condition. After the crew completed inspection and repairs, the Allegra left United States waters. The district court is presently holding the collected information in camera pending appeal. None of the parties have seen this material, nor do they know the precise nature of the information collected.

II.

Pacific Eternity raises several issues on appeal. First, Pacific Eternity argues that it is generally improper for a district court to order discovery incident to an arbitrable dispute. Second, Pacific Eternity

argues that Federal Rule of Civil Procedure 81 permits discovery in Title 9 arbitration proceedings only to the extent that the arbitration agreement does not provide its own discovery procedures. See Fed. Rule Civ. P. 81(a)(3). Because the arbitral forum has its own discovery procedures, Pacific Eternity insists that the district court erred in allowing discovery in aid of arbitration. Third, Pacific Eternity argues that even if "extraordinary circumstances" would have justified discovery in aid of arbitration in some circumstances, Deiulemar did not choose the proper method of effectuating that discovery in the present case because Deiulemar failed to satisfy the specific requirements of its chosen discovery mechanism, Rule 27. Specifically, Pacific Eternity maintains that the district court lacked subject matter jurisdiction over Deiulemar's Rule 27 petition because Deiulemar failed to articulate any cognizable action that it legitimately expected to bring in federal court. Finally, Pacific Eternity contends that Deiulemar misused Rule 27 by seeking to discover new evidence, as opposed to perpetuating known evidence.[6]

We review the district court's grant of a Rule 27 petition for an abuse of discretion. See Shore v. Acands, Inc. , 644 F.2d 386, 388 (5th Cir. 1981); Ash v. Cort, 512 F.2d 909, 912 (3d Cir. 1975). For the reasons that follow, we agree that Deiulemar demonstrated "extraordinary circumstances" that justified Rule 27 discovery in aid of arbitration and that Rule 81 did not preclude the district court from considering Deiulemar's discovery request. We also conclude that the district court did not abuse its discretion in entertaining Deiulemar's Rule 27 petition. Accordingly, we affirm.

III.

We first address whether a district court may, under limited "extraordinary circumstances," grant discovery in aid of arbitration. Federal discovery rules typically do not apply to disputes governed by arbitration provisions. See Comsat Corp. v. National Science Found., 190 F.3d 269, 276 (4th Cir. 1999) ("A hallmark of arbitration -- and

_____

[6] Pacific Eternity also argues that we should remand the case to the district court for appropriate fact-finding. Our review of the record, however, does not reveal any disputed facts that would materially affect our disposition of this case.

6

a necessary precursor to its efficient operation-- is a limited discovery process."); Burton v. Bush, 614 F.2d 389, 390 (4th Cir. 1980) ("When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial. One of these accoutrements is the right to pre-trial discovery." (internal citations omitted)). Some lower courts, however, allow discovery in aid of arbitration "where a movant can demonstrate `extraordinary circumstances,'" such as "where a vessel with crew members possessing particular knowledge of the dispute is about to leave port," or where there is a "special need for information which will be lost if action is not taken immediately." In re Deiulemar, 153 F.R.D. 592, 593 (E.D. La. 1994) (permitting Rule 27 perpetuation of evidence). Courts typically find "extraordinary circumstances" where evidence is likely to disappear before a claimant can file suit in federal court. See id. at 593; Oriental Commercial & Shipping Co. v. Rosseel, 125 F.R.D. 398, 400 (S.D.N.Y. 1989) ("[D]iscovery `in aid of arbitration' is permitted by the courts where a movant can demonstrate`extraordinary circumstances.'"); Ferro Union Corp. v. SS Ionic Coast, 43 F.R.D. 11, 14 (S.D. Tex. 1967) (permitting discovery under Rule 34 where evidence was located on a ship that was about to leave United States waters).

In Comsat, we recently recognized the concept of "extraordinary circumstances" when we stated that a district court could, upon a showing of "special need or hardship," compel pre-hearing discovery. See 190 F.3d at 278 ("[W]e hold today that a federal court may not compel a third party to comply with an arbitrator's subpoena for pre-hearing discovery, absent a showing of special need or hardship."). In Comsat, we reversed the district court's order requiring the National Science Foundation to comply with an arbitrator's subpoena because the National Science Foundation was not a party to the arbitration. See id. at 271. We concluded that the discovery provisions of the Federal Arbitration Act (FAA), 9 U.S.C.A. § 7 (West 1999), did not authorize an arbitrator to subpoena third parties and that the district court, therefore, erred in enforcing the subpoena. See Comsat, 190 F.3d at 275-76. We noted, however, that in Burton, "we contemplated that a party might, under unusual circumstances, petition the district court to compel pre-arbitration discovery upon a showing of special

7

need or hardship."[7] Id. at 276. In addressing whether Comsat had demonstrated a "special need," we stated that:

> [w]e do not now attempt to define "special need," except to observe that at a minimum, a party must demonstrate that the information it seeks is otherwise unavailable. Comsat did not attempt such a showing before the district court, and we infer from the record that no such showing would be possible.[8]

_____

[7] Burton challenged an arbitration award by arguing that the arbitrator should have granted him a continuance so that he could address the unfavorable testimony of a "surprise" witness. See Burton v. Bush, 614 F.2d 389, 390 (4th Cir. 1980). There was no pre-trial discovery permitted in the arbitration, and Burton never applied to compel discovery. See id. As a result, although we recognized that some courts permit discovery in cases of "special need" to assist arbitration, we did not address the issue because Burton had not raised it below. See id. ("Since Burton never applied to the district court for an order to compel discovery we need not consider those cases allowing discovery upon a showing of special need. In passing, however, we note that the former cases would not have aided the appellant since there is a total absence of special need or hardship." (internal citations omitted)).

One other circuit has raised, but not resolved, the applicability of "extraordinary circumstances." See Suarez-Valdez v. Shearson Lehman/American Express, Inc., 858 F.2d 648, 649 n.1 (11th Cir. 1988) ("We need not decide whether a district court might order discovery to aid in arbitration where the court found some `special need' for the discovery. Conceivably such a rule risks a plunge into judicial control over arbitration." (internal citations omitted)). In Suarez-Valdez, the district court stayed trial pending arbitration but did not stay discovery under the Federal Rules of Civil Procedure. See id. at 649. In concluding that the district court erred, the Eleventh Circuit noted that it did not have to address whether "extraordinary circumstances" could ever justify discovery in aid of arbitration "because the plaintiffs never contended to the district court that they had such an unusual circumstance, and the district court made no such finding." Id. at 649 n.1.

[8] The record showed, among other things, that Comsat could have obtained the documents it sought through the Freedom of Information Act (FOIA). Comsat Corp. v. National Science Found., 190 F.3d 269, 276 (4th Cir. 1999). In fact, Comsat had earlier obtained hundreds of responsive documents through FOIA. See id.

8

Id. In the present case, Pacific Eternity was repairing the ship's main engine and hull and the condition of these items was crucial to Deiulemar's arbitration claim. Deiulemar's effort to preserve the evidence on the Allegra was disrupted by Pacific Eternity, which denied Deiulemar access to the ship.**9** In addition, the Allegra was going to leave United States waters once Pacific Eternity completed repairs. As a result, Deiulemar was in danger of losing access to any evidence of the ship's condition. Although Deiulemar arguably could have sought emergency discovery from the London arbitrator, Deiulemar represented that it could not do so in time to preserve the rapidly changing condition of the ship. Given the time-sensitive nature of Deiulemar's request and the evanescent nature of the evidence sought, we do not believe that the district court abused its discretion in accepting Deiulemar's representation. Accordingly, we believe that Deiulemar adequately demonstrated that "the information it [sought was] otherwise unavailable." Id.

Moreover, these facts fit squarely within the "extraordinary circumstances" exception as applied by the trial courts in Deiulemar and Ferro Union. See Deiulemar, 153 F.R.D. at 593 (allowing Rule 27 perpetuation of evidence from a ship that was scheduled to leave United States waters three weeks after the petitioner was notified of an expected indemnity claim); Ferro Union, 43 F.R.D. at 14 (permitting Rule 34 discovery from a ship that was scheduled to leave port in four days). Like the petitioners in Deiulemar and Ferro Union, Deiulemar sought evidence from a ship that was soon leaving United States waters. It requested perpetuation of evidence that, if not preserved, was going to disappear or be materially altered. The evidence that Deiulemar sought was necessary to its arbitration claim and Deiulemar was reasonably uncertain whether it could timely preserve the

_____

**9** Pacific Eternity argues that Deiulemar had over a month to file for arbitration, including several weeks while the Allegra was in Hampton Roads. As a result, Pacific Eternity contends, there was no real urgency behind its discovery request. Deiulemar argues that there were no "extraordinary circumstances" until Pacific Eternity denied Deiulemar's expert, Captain Popp, access to the ship. Deiulemar asserts that until that moment, it believed that Pacific Eternity would cooperate and that Deiulemar would be able to inspect the evidence of the ship's condition pursuant to clause 69 of the Charter Party agreement.

9

evidence outside the district court. In this narrow set of facts, we agree with the district court's conclusion that Deiulemar faced a "special need" that justified preserving the evidence on the <u>Allegra</u>.**10**

IV.

We next address whether Federal Rule of Civil Procedure 81 prohibited the district court from granting Deiulemar's Rule 27 petition. Rule 81(a)(3) provides that "[i]n proceedings under Title 9, relating to arbitration, . . . these rules apply only to the extent that matters of procedure are not provided for in [Title 9]." Fed. R. Civ. P. 81(a)(3). Section 4 of Title 9 "requires that district courts enforce arbitration agreements `in accordance with the terms of the agreement.'" <u>Champ v. Siegel Trading Co.</u>, 55 F.3d 269, 274 (7th Cir. 1995) (quoting 9 U.S.C. § 4). Consequently, Pacific Eternity argues that Rule 81 permits application of federal discovery rules "only to the extent that matters of procedure are not provided for in [the arbitration agree-

_____

**10** In these specific facts, we do not believe that we "risk[ ] a plunge into judicial control over arbitration" by affirming the district court's application of "extraordinary circumstances." <u>Suarez-Valdez v. Shearson Lehman/American Express, Inc.</u>, 858 F.2d 648, 649 n.1 (11th Cir. 1988). First, these circumstances were truly unusual because they involved rapidly changing evidence, a ship that was leaving United States waters, and arguably dilatory tactics by Pacific Eternity. Second, our review is complicated by the fact that unlike most discovery disputes incident to arbitration, we must consider whether to undo discovery that has already occurred and that can never be regained. Finally, the district court, in its wisdom, merely preserved the evidence by holding it <u>in camera</u> away from the eyes of either party. As discussed later, <u>see infra</u> part VI, this evidence will remain unseen unless the arbitrator decides to unseal it. As a result, no court is exerting "judicial control over arbitration" whatsoever; the judicial system is simply preserving evidence for the arbitrator's determination of its usefulness.

We also do not intimate that by recognizing Rule 27 discovery in aid of arbitration in these specific facts, we intend to open all forms of pre-arbitration discovery in circumstances of "special need." To the contrary, we limit our holding today to Rule 27 perpetuation in the specific circumstances described above. We leave for future determination the proper scope of the "special need" exception as it applies to other forms of discovery in aid of arbitration.

ment]." Fed. R. Civ. P. 81(a)(3). Pacific Eternity maintains that because the parties agreed to arbitrate all disputes in London, they also agreed to follow the discovery procedures found in the London Arbitration Act of 1996. As a result, Pacific Eternity asserts, Rule 81 prohibited the district court from permitting discovery in aid of arbitration because the London Arbitration Act provided its own discovery procedures. Pacific Eternity also contends that Rule 81 should trump any "extraordinary circumstances" because none of the cases that have allowed discovery in aid of arbitration under "extraordinary circumstances" has explicitly addressed Rule 81. We conclude, however, that Rule 81 does not apply in the present case.

Under Rule 81(a)(3), "the Federal Rules fill in only those procedural gaps left open by the FAA." Champ, 55 F.3d at 276. The FAA, which is codified in Title 9, see 9 U.S.C.A.§§ 1-16 (West 1999), "declares that certain types of agreements for arbitration shall be enforceable and makes provision for their enforcement in the federal courts." Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co., 20 F.R.D. 359, 361 (S.D.N.Y. 1957). Rule 81, therefore, would authorize a district court, in enforcing an arbitration agreement, to "order discovery pursuant to Fed. R. Civ. P. 26 on matters relevant to the existence of an arbitration agreement." Champ, 55 F.3d at 276. The relevant question for this case, however, is whether Rule 81 applies to authorize or prohibit the application of the Federal Rules of Civil Procedure to matters incident to the merits of the underlying arbitration itself.

In Champ, the Seventh Circuit addressed whether the district court could certify class arbitration. Intervenors in the case argued that Rule 81(a)(3) authorized the district court to apply the Federal Rules of Civil Procedure to certify class arbitration because the FAA and the arbitration agreement were silent on class arbitration. See 55 F.3d at 274. The court rejected this argument for two reasons. First, the court noted that

> section 4 of the FAA requires that we enforce an arbitration agreement according to its terms. Such terms conceivably could consist of consolidated or even class arbitration. The parties here did not include in their agreement an express term providing for class arbitration. Thus, one could say that

11

through the proper application of 9 U.S.C. § 4 the FAA has already provided the type of procedure to be followed in this case, namely, non-class-action arbitration.

Id. at 276. Second, the court concluded that"more to the point, we still could not accept the intervenors' assertions because by its language Rule 81(a)(3) only applies to judicial proceedings under the FAA," such as motions to stay arbitration, compel arbitration, or vacate arbitration awards. Id. Although"a district court could order discovery pursuant to Fed. R. Civ. P. 26 on matters relevant to the existence of an arbitration agreement" to determine whether to stay or compel arbitration, "nothing in the language of Rule 81(a)(3) purports to apply the Federal Rules of Civil Procedure to the actual proceedings on the merits before the arbitrators." Id.

Similarly, in Commercial Solvents, the district court vacated a notice to take depositions under the Federal Rules of Civil Procedure in an arbitrable dispute. The court rejected the contention that Rule 81(a)(3) "fills the void and authorizes application of the federal discovery rules" to aid arbitration. 20 F.R.D. at 361. The court noted that "[a]t this stage, in the instant matter, the parties have submitted to arbitration, there is no proceeding pending in another court relating to the matter submitted to arbitration, and there has been no occasion to initiate any of the proceedings expressly authorized in the [FAA]."[11] Id. The court reasoned that "[a]pplication of the federal rules in proceedings under the Federal Arbitration Act to supply`matters of procedure,' not provided for therein, is authorized. Rule 81(a)(3) comes into play, however, only in proceedings under the Act. The instant matter involves none." Id.

_____

[11] Title 9 authorizes the court to enforce arbitration agreements through the following mechanisms, none of which address the merits of the underlying arbitration itself: motions to stay (§ 3), petitions to compel arbitration (§ 4), applications for the appointment of an arbitrator (§ 5), applications for the confirmation of an arbitration award (§ 9), applications to vacate an award (§ 10), and applications to modify or correct an arbitration award (§ 11). See Champ v. Siegel Trading Co., 55 F.3d 269, 276 (7th Cir. 1995). At oral argument, counsel for Pacific Eternity stated that it had sought a stay, both orally and in conjunction with its motion to dismiss. The record, however, does not support Pacific Eternity's assertions.

12

The lesson of Champ and Commercial Solvents is that Rule 81(a)(3) does not affirmatively authorize application of the federal rules to matters that are incident to an arbitrable dispute because Rule 81 does not apply to an underlying arbitration proceeding. Rather, it applies only to allow or prohibit use of the federal rules in Title 9 proceedings. Consequently, a district court could invoke Rule 81(a)(3) to use federal discovery rules to determine whether a dispute is arbitrable. See Champ, 55 F.3d at 276. The district court could not, however, invoke Rule 81 to authorize discovery in aid of arbitration because Rule 81 simply does not apply with respect to the arbitration proceeding itself. See id. The flip side is also true; Rule 81 does not preclude discovery incident to arbitration because it does not apply in this context at all.**12** The present case does not involve a Title 9 proceeding; it involves discovery related to the merits of the underlying arbitration. For that reason, we conclude that Rule 81, by its language, did not prohibit the district court from considering Deiulemar's request for discovery in aid of arbitration.**13**

_____

**12** Moreover, even if Rule 81 applied in the present case, it is unclear that it would necessarily be incompatible with discovery in aid of arbitration under "extraordinary circumstances." See Penn Tanker Co. v. C.H.Z. Rolimplex, Warszawa, 199 F. Supp. 716, 718 (S.D.N.Y. 1961) (rejecting the argument that Rule 81(a)(3) affirmatively authorizes court ordered discovery in aid of arbitration but noting, in dicta, that "I do not think that Rule 81(a)(3) is designed to allow judicially imposed and controlled discovery as to the merits of a controversy which will be referred to arbitration . . . except, perhaps, upon a showing of true necessity because of an exceptional situation -- which this case does not appear to be").

**13** Pacific Eternity also appears to argue that it is improper for Deiulemar to perpetuate evidence in aid of arbitration, as opposed to preserving evidence solely for the anticipated federal action that serves as its jurisdictional predicate. See generally infra part V (discussing jurisdictional requirements of Rule 27). Pacific Eternity correctly notes that Deiulemar's anticipated actions to enforce or compel arbitration are Title 9 actions that, by themselves, would probably not entitle Deiulemar to discovery on the merits of the underlying arbitrable dispute. See Fed. R. Civ. P. 81(a)(3). We recognize that permitting Rule 27 perpetuation in aid of arbitration may create a slight anomaly to the extent that Deiulemar could use Rule 27 to preserve evidence that it could not otherwise discover through its anticipated federal court actions. But the very idea of "extraordinary circumstances" is to preserve evidence in aid of arbitra-

13

V.

Pacific Eternity also argues that the district court lacked subject matter jurisdiction over Deiulemar's Rule 27 petition because Deiulemar failed to satisfy Rule 27's requirements. In particular, Pacific Eternity contends that Deiulemar failed to demonstrate a cognizable action that it expected to bring in federal court and that it impermissibly sought to discover new evidence, as opposed to perpetuating known evidence. We agree with the district court that Deiulemar established a cognizable action and that Deiulemar did not seek to use Rule 27 as an impermissible discovery device. We also agree that the district court, by allowing perpetuation of evidence, prevented a failure or delay of justice as required by Rule 27(a)(3).

A.

Deiulemar maintains that it established subject matter jurisdiction by demonstrating three cognizable actions -- "either to compel arbitration, seek security or to enforce an award"-- that it was unable to bring in federal court when it filed its Rule 27 petition.**14** (J.A. at 3.)

_____

tion rather than in aid of anticipated federal court actions. See Oriental Commercial & Shipping Co. v. Rosseel, 125 F.R.D. 398, 401 (S.D.N.Y. 1989) (denying discovery in aid of arbitration because the petitioner sought to discover evidence in order to ensure its ability to enforce an arbitration award rather than determine the merits of the underlying arbitration and noting that "[t]he term `exceptional circumstances' addresses situations where a party's ability to properly present its case to the arbitrators will be irreparably harmed absent court ordered discovery," and that "the line of cases permitting discovery `in aid of arbitration' only apply to discovery concerning the subject matter of the suit to be arbitrated"). We note that at least one trial court has permitted Rule 27 discovery in aid of arbitration under "extraordinary circumstances." See In re Deiulemar, 153 F.R.D. 592, 593 (E.D. La. 1994) (permitting Rule 27 perpetuation in aid of arbitration). We have not found any other case that directly addresses the compatibility of Rule 27 to discovery in aid of arbitration.

**14** It is undisputed that Deiulemar's anticipated actions to compel or enforce arbitration would have taken place in federal court because the Allegra was in United States waters when Deiulemar filed its petition. It is also undisputed that Deiulemar was initially unable to bring its anticipated actions to enforce or compel arbitration in federal court because it had not yet initiated arbitration when it filed its petition.

14

Pacific Eternity argues that these asserted actions are not "cognizable" because they are too speculative. Pacific Eternity contends that it never affirmatively disputed arbitration, and, therefore, Deiulemar had no basis to anticipate any future action to enforce or compel arbitration. We conclude that the district court did not abuse its discretion in implicitly finding that Deiulemar had established potentially cognizable actions to support its Rule 27 petition.

Rule 27 is a means of perpetuating testimony before trial. See Ash v. Cort, 512 F.2d 909, 911 (3d Cir. 1975). A Rule 27 petitioner must show, among other things, that it expects to be a party to an action "that may be cognizable in any court of the United States but is presently unable to bring it or cause it to be brought."[15] Fed. R. Civ. P. 27(a)(1). "Rule 27 properly applies only in that special category of cases where it is necessary to prevent testimony from being lost."[16]

_____

[15] Rule 27 requires a petitioner to show:

> 1, that the petitioner expects to be a party to an action cognizable in a court of the United States but is presently unable to bring it or cause it to be brought, 2, the subject matter of the expected action and the petitioner's interest therein, 3, the facts which the petitioner desires to establish by the proposed testimony and the reasons for desiring to perpetuate it, 4, the names or a description of the persons the petitioner expects will be adverse parties and their addresses so far as known, and 5, the names and addresses of the persons to be examined and the substance of the testimony which the petitioner expects to elicit from each.

Fed. R. Civ. P. 27(a)(1).

[16] A petitioner, therefore, must demonstrate "an immediate need to perpetuate testimony." Penn Mut. Life Ins. Co. v. United States, 68 F.3d 1371, 1375 (D.C. Cir. 1995); see In re Checkosky, 142 F.R.D. 4, 7 (D.D.C. 1992) ("[M]ost courts have held that a petitioner must make a particularized showing that the testimony needs to be taken in advance of the contemplated action."). For the reasons described above, in our discussion of Deiulemar's "special need" to preserve the evidence, we believe that Deiulemar demonstrated an immediate need for the evidence. See supra part III (discussing Deiulemar's representation that Pacific Eternity was altering the condition of the ship and that the ship would soon leave United States waters); In re Bay County Middlegrounds Landfill Site, 171 F.3d 1044, 1047 (6th Cir. 1999) (requiring

15

Ash, 512 F.2d at 911. Because the rule's purpose"is not the determi-nation of substantive rights, but merely the providing of aid for the eventual adjudication of such rights in a suit later to be begun," it is designed to "afford a simple ancillary or auxiliary remedy to which the usual federal jurisdictional and venue requirements do not apply." Mosseller v. United States, 158 F.2d 380, 382 (2d Cir. 1946). As a result, "[t]here need not be an independent basis in federal jurisdiction in a proceeding to perpetuate, but it must be shown that in the con-templated action, for which the testimony is being perpetuated, fed-eral jurisdiction would exist and thus is a matter that may be cognizable in the federal courts." Dresser Indus. v. United States, 596 F.2d 1231, 1238 (5th Cir. 1979).

A petitioner does not have to demonstrate a cognizable action with absolute certainty. See Penn Mut. Life Ins. Co. v. United States, 68 F.3d 1371, 1374 (D.C. Cir. 1995). In De Wagenknecht v. Stinnes, 250 F.2d 414 (D.C. Cir. 1957), a petitioner sought the return of certain property under the Trading with the Enemy Act. See id. at 415. Although the petitioner could not bring suit because she did not meet all of the Act's requirements, other parties had filed administrative claims under the Act to obtain the same property. See id. at 416. The petitioner asserted that she had a potential "cognizable action" in United States court based upon two contingent possibilities: (1) that the other parties seeking the property might prevail, in which case the petitioner could then sue them in federal court; and (2) that Congress might pass legislation that would return the property to its former German owners, in which case the petitioner could sue the Attorney General for refusing to recognize her claim. See id. at 417. The court concluded that the district court did not abuse its discretion in finding that there was a "sufficient likelihood that the expected litigation [would] eventuate." Id. Accordingly, the court affirmed the district court's finding that the petitioner had established a cognizable action

_____

only a "reasonable showing of the need to perpetuate the testimony lest it be lost because of the commencement of litigation"); cf. Penn Mut., 68 F.3d at 1375 (noting that although general allegations are not sufficient to show an immediate need to perpetuate testimony,"the age of a pro-posed deponent may be relevant in determining whether there is suffi-cient reason to perpetuate testimony").

16

despite the existence of contingent events, i.e., that the other parties would prevail, or that Congress would pass legislation returning the property to its former German owners. See id. at 418. Thus, even anticipated actions that are contingent and uncertain can be cognizable for the purposes of Rule 27 jurisdiction.

In the present case, Deiulemar filed its Rule 27 petition the day after Pacific Eternity denied Captain Popp access to the Allegra. At the time of filing, Deiulemar had not yet initiated arbitration. Thus, it was not certain that Deiulemar would have to compel or enforce arbitration. Under the circumstances, however, Deiulemar reasonably believed that it could not wait and see whether Pacific Eternity would comply with arbitration because Pacific Eternity was repairing the ship and crucial evidence was rapidly disappearing or changing. Moreover, Deiulemar asserted that Pacific Eternity demonstrated bad faith and dilatory intent by stonewalling Deiulemar and denying Captain Popp access to the ship. Given the district court's reasonable reliance on Deiulemar's allegations at the time of filing, as well as the clear exigency of the moment, we cannot say that the district court abused its discretion. We recognize that Deiulemar's anticipated actions to compel or enforce arbitration were not absolutely certain, nor were they present rights of action. But, Rule 27 does not require absolute certainty. See Penn Mut., 68 F.3d at 1374; De Wagenhecht, 250 F.2d at 417. A cognizable action only requires "a sufficient likelihood that the expected litigation will eventuate." Id. In the present case, given Pacific Eternity's questionable conduct in denying Deiulemar access to the ship -- an act that, on its face, may be described as a dilatory tactic -- we cannot say that the district court abused its discretion when it asserted jurisdiction over Deiulemar's petition after Deiulemar represented that it would potentially have to bring an action to enforce or compel arbitration in federal court.

B.

Pacific Eternity next argues that Deiulemar abused Rule 27 by using it to discover new evidence, as opposed to perpetuating known evidence. As a result, Pacific Eternity argues, Deiulemar exceeded the proper scope of Rule 27 jurisdiction. We disagree.

Rule 27 is not a substitute for broad discovery, see Penn Mut. Life Ins. v. United States, 68 F.3d 1371, 1376 (D.C. Cir. 1995), nor is it

17

designed as a means of ascertaining facts for drafting a complaint, <u>see In re Storck</u>, 179 F.R.D. 57, 58 (D. Mass. 1998) ("The rule is not designed to allow pre-complaint discovery."); <u>In re Sitter</u>, 167 F.R.D. 80, 82 (D. Minn. 1996) ("Here, because the testimony of the proposed deponents is unknown to Sitter, she is wholly unable to set forth the substance of the testimony that she would hope to preserve by the taking of the pre-action depositions."). A petitioner must know the substance of the evidence it seeks before it can invoke Rule 27 perpetuation. <u>See Nevada v. O'Leary</u>, 63 F.3d 932, 936 (9th Cir. 1995) (finding that the petitioner could not satisfy Rule 27 because it could not "set forth the substance of the testimony"); <u>Penn Mut.</u>, 68 F.3d at 1376; <u>In re Ford</u>, 170 F.R.D. 504, 507 (M.D. Ala. 1997) ("Here, Ford seeks to discover or uncover testimony, not to perpetuate it. . . . Ford simply wants to know who shot Roberts and why. Rule 27 simply does not provide for such discovery.").

In the present case, Pacific Eternity argues that Deiulemar sought to use Rule 27 as a discovery device to uncover new evidence rather than perpetuating known evidence. Pacific Eternity points to Deiulemar's petition, which states that Deiulemar needed Rule 27 discovery "to learn the present condition of the engine," (J.A. at 34), and that "[t]he purpose in perpetuating this evidence is to determine the nature and extent of Petitioner's claim for breach of the attached [Charter Party agreement.]" (J.A. at 5.) These statements suggest that Deiulemar might not have known the exact nature of the evidence that it sought to gather. At the time Deiulemar filed its petition, however, the Coast Guard had already revealed several engine-related defects on the <u>Allegra</u>. <u>See supra</u> note 2 (describing deficiencies uncovered by Coast Guard). Based on these reports alone, the district court had some basis to conclude that Deiulemar, in requesting perpetuation of evidence related to the condition of the ship and its engine parts, largely knew the substance of the information that it sought to preserve through Rule 27. In particular, the district court could reasonably conclude that Deiulemar knew of and sought to preserve the present condition of the defective engine parts, as described by the Coast Guard's safety reports. The district court, therefore, did not abuse its discretion in implicitly finding that Deiulemar sought to perpetuate, rather than discover, the evidence on the <u>Allegra</u>.**17** <u>See In re</u>

_____

**17** In arguing that Deiulemar simply sought to use the district court as a vehicle for impermissible discovery, Pacific Eternity misapprehends

18

Bay County Middlegrounds Landfill Site, 171 F.3d 1044, 1046 (6th Cir. 1999) ("We hold that the judge's discretion encompasses the nature and quality of evidence required to make or rebut the required showing in Rule 27(a)(1).").

C.

Before a district court can order perpetuation of testimony, the court must be "satisfied that the perpetuation of the testimony may prevent a failure or delay of justice." Fed. R. Civ. P. 27(a)(3) (stating that the district court "shall make an order" perpetuating evidence if it is "satisfied that the perpetuation of the testimony may prevent a failure or delay of justice"). We believe that the district court prevented a failure or delay of justice when it ordered the perpetuation of the evidence on the Allegra.

To show that Rule 27 perpetuation of testimony may prevent a failure or delay of justice, a petitioner "must demonstrate a need for [the testimony or evidence] that cannot easily be accomodated by other potential witnesses." Penn Mut. Life Ins. v. United States, 68 F.3d 1371, 1375 (D.C. Cir. 1995). "[T]he testimony to be perpetuated must be relevant, not simply cumulative, and likely to provide material distinctly useful to a finder of fact." In re Bay County Middlegrounds Landfill Site, 171 F.3d 1044, 1047 (6th Cir. 1999). "Evidence that throws a different, greater, or additional light on a key issue might well `prevent a failure or delay of justice.'" Id. (quoting Fed. R. Civ. P. 27(a)(3)).

To establish its arbitration claim for breach of the Charter Party agreement, Deiulemar had to secure evidence of the ship's condition. This evidence was rapidly changing, however, and would soon disap-

_____

the narrow scope of the district court's action. The district court preserved the evidence; it did not allow Deiulemar to develop or discover any information, nor did it rule on its admissibility. The evidence remains sealed in camera at the district court. Pacific Eternity has a clear remedy at hand; it can seek to suppress the evidence in London. By successfully arguing before the arbitrator, Pacific Eternity can prevent Deiulemar from ever obtaining the evidence.

19

pear when the ship left United States waters. Although the Coast Guard partially described the ship's condition in its report, including the ship's various mechanical defects, a third-party report written for a purpose other than litigation is a questionable substitute for an expert's firsthand inspection of the ship's reported problems. For that reason, Deiulemar's need to perpetuate evidence on the Allegra could not "easily be accomodated by other potential[evidence]." Penn Mut., 68 F.3d at 1375. Moreover, the evidence preserved from the Allegra will likely shed "different, greater, or additional light" on the dispute beyond the information found in the Coast Guard's brief record of deficiencies. Bay County, 171 F.3d at 1047. Accordingly, we conclude that the district court did not abuse its discretion.

We recognize, in this shrinking world of increasingly efficient global communication, that Deiulemar conceivably could have preserved the evidence by seeking discovery in London without ever invoking the district court's jurisdiction. But, Deiulemar did not choose this route. Rather, it sought redress in federal court, and, at the time, it was permissible for it to do so because there was no pending arbitration. Deiulemar's petition, on its face, appeared to be complete. It described a situation of obvious exigency based on disappearing evidence, and it asserted potentially cognizable actions to compel or enforce arbitration. It also purported to preserve, rather than develop or discover, crucial evidence in aid of arbitration. With limited time and information, the district court was forced to balance this exigency against the uncertain possibility that Deiulemar might be able to preserve the evidence in another forum. We have no difficulty holding that the district court did not abuse its discretion under these exceptional circumstances when it entertained Deiulemar's Rule 27 request.

VI.

Having determined that the district court did not err in considering Deiulemar's Rule 27 petition, we now must decide whether to unseal the preserved evidence. For the reasons stated below, we decline to unseal the evidence. Rather, we remand with instructions to transfer the sealed evidence to the pending arbitration proceeding. The evidence has been gathered, the condition of the ship has changed, the ship has sailed out of United States waters, and the arbitration proceedings have been initiated. Deiulemar, having successfully gathered

20

evidence from the <u>Allegra</u>, desires to unseal it before the arbitrator has an opportunity to rule on its admissibility. If we grant Deiulemar's request, we will effectively place Deiulemar in a better position than it held before it filed its Rule 27 petition. Had there been no purported "extraordinary circumstances," Deiulemar would have had to seek discovery from the arbitrator in London, and the arbitrator would have made his decision without first seeing any of the evidence. Discovery in aid of arbitration is an emergency measure designed to preserve evidence. <u>See Ash v. Cort</u>, 512 F.2d 909, 911 (3d Cir. 1975). It is not meant to allow parties to circumvent the discovery procedures of arbitral forums.

By contrast, Pacific Eternity asks us to "unring the bell" by requiring the district court to destroy evidence, already gathered, that can never be reproduced. This option would suppress evidence that the arbitrator may find useful in adjudicating the merits of the underlying dispute. The cost and inconvenience associated with gathering this information has already been incurred. There is simply no practical reason to deny the arbitrator the opportunity to make his own decision on this matter. This is particularly true where the evidence is undisturbed and unseen and, therefore, does not presently provide either party with an unfair advantage.

The Fifth Circuit faced a similar dilemma in <u>In re Price</u>, 723 F.2d 1193 (5th Cir. 1984). In <u>Price</u>, the Fifth Circuit refused to hear an appeal from a successful Rule 27 petition where discovery had already taken place and the underlying action had already begun. <u>See id.</u> at 1194-95 (remanding appeal of a Rule 27 petition to district court for consolidation with the underlying main action where perpetuation had already occurred before the parties were able to file the main action). In declining to hear the appeal, the court noted that "we see no reason to proceed with this appeal... whereby we are asked to pass in advance on aspects of the admissibility of evidence -- evidence that may or may not be offered at the forthcoming trial and, if offered, may or may not be admitted."[18]<u>Id.</u> at 1194. The court noted the following:

_____

[18] In <u>In re Price</u>, 723 F.2d 1193 (5th Cir. 1984), like the present case, the court faced the issue of whether the district court lacked subject mat-

21

None of the reasons that support appellate review of a Rule 27 order, favorable or unfavorable, before the deposition that it authorizes or declines to authorize has been taken and the action for which the deposition is intended has been filed continue to obtain after these events have occurred. Whatever expense and effort were to have been occasioned by the deposition and might have been avoided have already been occasioned. Nor, in these circumstances, need there be fear that testimony will be lost because of an incorrect order unfavorable to deposing a witness. Finally, a tribunal is presently available to entertain a motion to dismiss any action filed without subject-matter jurisdiction, terminating any further unjustified inconvenience to the moving party.

Id. at 1194-95. The court concluded that "except in unusual and compelling circumstances not present here and which we do not now envision, review of Rule 27 orders is better declined when the deposition authorized has already been taken and the action for which it is intended has been filed." Id. at 1195.

In the present case, the perpetuation of the evidence has already occurred and Deiulemar has already initiated arbitration in London. Neither party has seen the evidence gathered from the Allegra, and, as a result, the arbitrator will have an opportunity to rule on Deiulemar's discovery request as if Deiulemar had brought it for the first time in the arbitral forum. Neither party will be prejudiced by this action. To the contrary, the parties are in the exact positions they would have held had Deiulemar sought discovery from the arbitrator

_____

ter jurisdiction over Price's Rule 27 petition because Price failed to assert a "cognizable" action that he could not presently bring in federal court. See id. at 1194. The court refrained from addressing the merits of Price's Rule 27 petition because discovery had already occurred. See id. at 1195. The court also declined to address whether the district court had subject matter jurisdiction over Price's Rule 27 petition because "such review invites the appellate court -- under the rubric of determining `cognizability' -- to pass on the subject matter jurisdiction of the district court over the pending main action. We think this better done in the first instance by the trial court . . . ." Id.

22

in the first place. The arbitrator does not have to admit the evidence, nor does he have to suppress it; that choice is left entirely to the arbitrator.

We find no unfairness in returning this issue, preserved in a pristine state, to the forum that will ultimately hear the merits of the underlying dispute. To the contrary, we can think of nothing fairer than leaving each party where it began. In doing so, we decline Pacific Eternity's invitation to destroy evidence that is already gathered and impossible to regain, and we decline Deiulemar's invitation to reveal the evidence in advance of any ruling by the arbitrator.

VII.

In summary, we conclude that the district court did not err in considering Deiulemar's Rule 27 petition. In deciding whether to entertain Deiulemar's Rule 27 petition, the district court had to balance the potentially uncertain nature of Deiulemar's asserted cognizable actions against Deiulemar's need to preserve evidence under "extraordinary circumstances," filtered by the lack of any demonstrable harm alleged by Pacific Eternity. Given the knowledge that it had at the time of filing, we find that the district court did not abuse its discretion when it asserted jurisdiction over Deiulemar's Rule 27 petition.

The present dispute involves discovery, already complete, that may or may not be admitted in an arbitration that is currently pending. The evidence is still sealed, and the parties have already absorbed any cost or inconvenience associated with its perpetuation. We decline to unseal or destroy the evidence gathered from the Allegra. We find it more appropriate to place the unseen evidence where it belongs -- before an arbitrator who is appointed to resolve undisputedly arbitrable disputes. For these reasons, we affirm the district court's exercise of jurisdiction and remand with instructions to transfer the sealed evidence to the arbitrator for the now-pending proceeding.

AFFIRMED AND REMANDED WITH INSTRUCTIONS

23