In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 21-1873

QI QIN,

*Petitioner-Appellant*,

*v.*

PAUL DESLONGCHAMPS,

*Respondent-Appellee*.

---

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-mc-00017 — **Lynn Adelman**, *Judge*.

---

ARGUED NOVEMBER 10, 2021 — DECIDED APRIL 14, 2022

---

Before MANION, ROVNER, and WOOD, *Circuit Judges*.

ROVNER, *Circuit Judge*. Qi Qin intends to sue a limited lia-
bility corporation whose members and their respective citi-
zenships are unknown to him. Without that information, he
believes he cannot, as a practical matter, bring a diversity suit
in federal court, which is his preferred forum. In an effort to
surmount that obstacle, he filed a petition pursuant to Federal
Rule of Civil Procedure 27, seeking leave to depose a known
member of the parent entity of the LLC he wishes to sue so

that he can ask that witness to identify the LLC's members. The district court denied the petition, reasoning in part that Qin's request is not one to perpetuate testimony that is at risk of being lost. We agree and affirm.

## I.

Qin is among 165 foreign limited partners (Qin is from China) who in 2011 collectively invested some $82.5 million into a limited partnership called Colorado Regional Center Project Solaris LLLP ("CRCPS"), whose general partner is Colorado Regional Center I LLC ("CRC-I" or the "LLC"). The parent company of CRC-I is Waveland Ventures LLC, which has a member (Paul Deslongchamps) and office in Milwaukee, Wisconsin. CRCPS was part of an approved U.S. EB-5 immigrant visa program through which Qin and others were able to obtain permanent-resident visas as a result of their investment in a commercial enterprise in the United States. Qin is now a lawful permanent resident of the U.S. and makes his home in Florida, although his petition indicates that he remains a citizen of China.

Pursuant to the limited partnership agreement of CRCPS, the general partner, CRC-I, receives an annual management fee of 2%, which comes to $1.6 million per year. Essentially, Qin and the other limited partners are funding the salaries of CRC-I and its members. CRC-I invested CRCPS's funds in a condominium project in Vail, Colorado through a series of five-year loan advances. The investment was a failure, allegedly due in no small part to the CRC-I's malfeasance, with losses to the investors totaling between $40 and $70 million.

In the meantime, while the limited partners have paid millions of dollars in management fees to CRC-I over the past 10

years, they allegedly have received a "pittance" in return on their investments.

In 2019, two groups of investors filed complaints against CRC-I in the District of Colorado; and those actions were consolidated under the name *Wu v. Colorado Regional Center Project Solaris, LLLP*, Nos. 19-cv-2443 and 19-cv-2637. Qin is a party to that consolidated action and along with other investors asserted a claim against CRC-I that he characterizes as one for breach of contract. But the district court construed his claim instead as a common law tort claim and released CRC-I from the case. *See Wu v. Colo. Reg. Ctr. Project Solaris LLLP*, 2021 WL 5038826, at *4 (D. Colo. Oct. 29, 2021) ("It is clear to the Court that the essence of the Li Plaintiffs' case is one that lies in tort."). That decision, among others, is pending on appeal before the Tenth Circuit (Nos. 21-1232 & 21-1253).

Believing he is free to pursue his breach of contract claim elsewhere, Qin, on behalf of a class of other disappointed investors, wants to sue CRC-I in the Eastern District of Wisconsin.[1] He has chosen that venue because Deslongchamps, a member of CRC-I's parent, Waveland Ventures LLC, lives in Milwaukee, and Waveland Ventures has an office there, which Deslongchamps manages. (There are also offices in Texas and Colorado.) But Qin does not know the identities and citizenships of all of the members of CRC-I and therefore cannot plead with reasonable certainty the existence of diversity of citizenship. *See America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992) (per curiam) (citizenship of limited partnership's general and limited

---

[1] Deslongchamps argues that any new claim for breach of contract would be barred by res judicata, but we need not reach that question.

partners may not be established, after prior opportunities to demonstrate diversity of citizenship, on allegations made "to the best of [affiant's] knowledge and belief"); *Page v. Wright*, 116 F.2d 449, 451 (7th Cir. 1940) (expressing doubt that allegations of party's citizenship for diversity purposes made only on information and belief can suffice to establish jurisdiction). (Qin assumes that as a lawful permanent resident of the United States who is domiciled in Florida, he would be treated as a citizen of Florida for diversity purposes. His assumption may be mistaken, as we note below. *See infra* n.2.)

The LLC business form is of relatively recent vintage and popularity. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 112 (3d Cir. 2015) (concurrence); Christine M. Kailus, Note, *Diversity Jurisdiction & Unincorporated Businesses: Collapsing the Doctrinal Wall*, 2007 UNIV. OF ILL. L. REV. 1543, 1546–48 (2007). As relevant here, one feature of the LLC is that, in the handful of states that allow it (among them Delaware), its members can be anonymous: an authorized third-party representative can register the LLC without disclosing the identities of the LLC's members. *See* Larry Donahue, *Regular LLC vs. Anonymous LLC*, LAW 4 SMALL BUSINESS (Oct. 6, 2016), available at https://l4sb.com/blog/regular-llc-versus-anonymous-llc/ (visited April 12, 2022). Even in states that do not formally permit anonymous LLCs, it can be challenging to ascertain the citizenship of the LLC's members from publicly available sources, particularly when the membership roster includes additional LLCs or other non-corporate entities. *See Lincoln Benefit Life*, 800 F.3d at 108 ("The membership of an LLC is often not a matter of public record.") & *id.* n.39 (collecting cases); *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 830 (7th Cir. 2020) (noting that partnership in that case had ownership structure 17 layers deep).

*Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96, 110 S. Ct. 1015, 1021 (1990), deems a limited partnership to be a citizen of every state in which any of its partners, general or limited, is a citizen; and because an LLC is an "animal … like a limited partnership," *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998), we have extended this treatment to the LLC, *see Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) (citing *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007)); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006) (collecting cases); *Cosgrove*, 150 F.3d at 731. So, in contrast to a corporation, which is a citizen of its state of incorporation and the state where it maintains its principal place of business (two states at most), *see* 28 U.S.C. § 1332(c)(1); *Hertz Co. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181 (2010), an LLC can be a citizen of many states. And in states where the members of the LLC need not be publicly identified, it can be difficult if not impossible for a prospective plaintiff to ascertain the membership and in turn determine whether he can sue the LLC in diversity.

E.D. Wisconsin Civil Local Rule 8 makes plain what the dilemma is for Qin. Local Rule 8 provides:

> If a pleading or notice of removal asserts jurisdiction based on diversity of citizenship, the pleading or notice must identify the amount in controversy and the citizenship of each party to the litigation. If any party is a corporation, the pleading or notice must identify both the state of incorporation and the state in which the corporation has its principal place of business. *If any party is an unincorporated association, limited*

> *liability company, or partnership, the pleading or no-*
> *tice must identify the citizenship of all members.*

(Emphasis supplied.) In compliance with Rule 8, Qin must identify the citizenship of all of the members of CRC-I. But he does not know who they are. His briefs lay out the various efforts he has made to identify the partners through publicly available records, tax returns, and social media (among other sources). Based on what he knows about the members of CRC-I and its parent, Waveland Ventures, he believes there is complete diversity as among himself and the LLC's membership, but unless CRC-I discloses the identity of all of its members, he cannot be sure.

In an attempt to obtain this information, Qin filed a petition in the Eastern District of Wisconsin pursuant to Rule 27, which in relevant part provides:

> A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides. The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony.

Rule 27(a)(1). Qin identified Deslongchamps as the person he wants to depose. And, of course, what he is seeking to learn from Deslongchamps is the identities of all of the members of CRC-I, so that he can establish whether diversity of citizenship exists.

Judge Adelman denied the petition on two grounds. *First*, Qin had not shown that his contemplated suit against CRC-I

would be cognizable in a United States court. In other words, because Qin cannot yet demonstrate that there is diversity of citizenship among the prospective parties to the action he wants to file, he cannot show that the anticipated suit falls within the subject matter jurisdiction of a federal court. The most he can state at this juncture is that, based on what he knows thus far, it is "likely" that there will be diversity jurisdiction, and Judge Adelman found that insufficient. Judge Adelman indulged Qin's assumption that he would be treated as a citizen of Florida for diversity purposes; but the judge noted the possibility that CRC-I, via one or more of its members, might, like Qin, be a citizen of Florida.[2] Also, apart from the unknown citizenships of CRC-I's members, Qin had not shown that his damages exceeded $75,000. *Second*, he had not shown that a deposition to elicit Deslongchamps' testimony is necessary to prevent that testimony from being lost.

---

[2] Qin's assumption that he qualifies as a citizen of Florida for diversity purposes may be mistaken. When in 2011 Congress removed section 1332(a)'s "deeming clause," which treated a lawful permanent resident of the U.S. as a citizen of his state of domicile, *see* Pub. L. No. 100-702, § 203(a), 102 Stat. 4642, 4646 (1988) ("an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled"), it replaced that clause with language that two of our sister circuits have construed to treat a lawful permanent resident as an alien for diversity purposes, *see* Pub. L. No. 112-63, § 101, 125 Stat. 758, 758 (2011). *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126–27 (2d Cir. 2020) (per curiam); *accord Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 848–49 (11th Cir. 2022) (per curiam). Treating Qin as an alien might in turn have consequences vis-à-vis his effort to invoke the diversity jurisdiction of a federal court. *See Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1041 (7th Cir. 2018); *Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 875 (7th Cir. 2004); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir. 1993).

The stated purpose of Rule 27, to perpetuate testimony, implies that there is a risk of such testimony being lost (due to an individual's impending death, for example). Qin was not invoking Rule 27 for that purpose, but rather to obtain jurisdictional discovery in the face of CRC-I's unwillingness to disclose the identity of its members. R. 10 at 6–8. Judge Adelman did not believe he had the authority "to either apply Rule 27(a) outside its domain or invent another procedure to provide Qin with the information he seeks." R. 10 at 8. And the judge was not persuaded that Qin's inability to obtain such information might result in an injustice. He noted that Qin could bring his breach of contract claim in state court. R. 10 at 8–9.

## II.

We review the denial of Qin's Rule 27 petition for abuse of discretion. *See In re Deiulemar Compagnia di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 479 (4th Cir. 1999); *In re Bay Cnty. Middlegrounds Landfill Site*, 171 F.3d 1044, 1045–46 (6th Cir. 1999); *Penn Mut. Life Ins. Co. v. U.S.*, 68 F.3d 1371, 1374 (D.C. Cir. 1995). The district court did not abuse its discretion in this case. Rule 27 allows for a particular and narrow form of inquiry to take place before a suit is filed. However sympathetic one might be with Qin's plight, his desire to take what amounts to pre-suit jurisdictional discovery falls outside the limited scope of the rule.

Pursuant to Rule 27, when there is a need to perpetuate the testimony of an individual relevant to a matter that is cognizable in federal court, the party seeking that testimony may file a verified petition in the judicial district where the individual resides asking the court to authorize his or her deposition. Rule 27(a)(1)–(2). The petitioner must show that he

expects to be a party to an action in a United States court but cannot presently bring the action or cause it to be brought. Rule 27(a)(1)(A). If the court is satisfied that perpetuating the sought-after testimony may prevent the failure or delay of justice, the court must issue an order allowing the deposition. Rule 27(a)(3).

Deslongchamps argues, and the district court agreed, that Qin's petition fails in the first instance because it does not show that Qin's prospective lawsuit is one cognizable in district court. *See M/V Allegra*, 198 F.3d at 484 (quoting *Dresser Indus., Inc. v. United States*, 596 F.2d 1231, 1238 (5th Cir. 1979)). This of course depends in part on whether there is diversity of citizenship between Qin and the members of the LLC. *See* 28 U.S.C. § 1332(a).[3] At this juncture Qin cannot establish diversity because he does not know who the members of the LLC are and whether any of them has the same citizenship as he does for diversity purposes. From his perspective, that is the very reason why it is necessary and appropriate for him to invoke Rule 27: without the opportunity to depose Deslongchamps, he cannot plead himself into federal court.

Qin's rationale presumes that Rule 27 is, or can be, a vehicle for obtaining pre-suit discovery in order to ascertain or confirm the existence of a fact necessary to bringing suit—in this case, diversity of citizenship. But this rationale attributes a breadth and purpose to the rule that it does not possess.

_____

[3] Qin's petition also did not allege that the amount at issue in his putative suit exceeds the jurisdictional threshold of $75,000. We shall assume for present purposes, given the significant amounts of money invested in CRCPS by Qin and the other limited partners, that this omission could have been corrected.

Rule 27 provides only for the perpetuation of testimony that is at risk of becoming unavailable. Rule 27(a)(3); *see Ariz. v. Cal.*, 292 U.S. 341, 347–48, 54 S. Ct. 735, 737–38 (1934) (bill of complaint to perpetuate testimony); *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014); *Penn. Mut. Life Ins. Co.*, 68 F.3d at 1375. This includes the testimony of a witness who is aged or seriously ill, might flee, or who may become unavailable by reason of relocation or other geographic constraints before a suit can be filed. *See, e.g., Calderon v. U.S. Dist. Ct. for N.D. Cal.*, 144 F.3d 618, 622 (9th Cir. 1998) (noting likelihood that witness might make himself unavailable in view of, *inter alia*, his observed panic when he encountered person he would likely inculpate in his testimony and his refusal to sign declaration); *Penn. Mut. Life Ins.*, 68 F.3d at 1375 n.3 (witness's plan to leave country for prolonged period); *Ash v. Cort*, 512 F.2d 909, 913 (3d Cir. 1975) (advanced age of witness); *In re Sims*, 389 F.2d 148, 150 (5th Cir. 1967) (witness's imminent departure for Peru).

That is not the scenario presented here. There is no allegation suggesting that Deslongchamps may become unavailable to Qin. What Qin is seeking is the opportunity to conduct jurisdictional discovery. Courts sometimes authorize such discovery after suit is filed when doubt emerges regarding whether, as alleged, the parties are in fact diverse. *E.g., Dancel v. Groupon, Inc.*, 940 F.3d 381, 386 (7th Cir. 2019); *Zurich Am. Ins. Co. v. Tangiers Int'l LLC*, 2018 WL 3770085, at *2 (N.D. Ill. Aug. 9, 2018). But in this case Qin is invoking Rule 27 to determine, before any suit is filed, whether the parties to his proposed suit are diverse such that he can file it in federal court. In sum, Qin's petition is not one to perpetuate testimony material to a prospective suit that he and the court have reason

to believe is cognizable in federal court but rather one to iden-tify whether a particular action *is* cognizable in federal court.

This is not a purpose recognized by Rule 27, and we do not have the authority to expand the rule beyond its stated scope. Federal courts are courts of limited jurisdiction. *Kokko-nen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Ibid.*; *see also Giancana v. Johnson*, 335 F.2d 366, 367–68 (7th Cir. 1964). Rule 27 allows for a limited form of discovery for a particular purpose when there is reason to be-lieve the court will have jurisdiction over the suit to which the discovery is relevant. Qin's proposed reading would broaden the rule to authorize discovery in instances when there may in fact be no basis for federal jurisdiction. *See Ash*, 512 F.2d at 912 ("We reiterate that Rule 27 is not a substitute for discov-ery. It is available in specific circumstances to preserve testi-mony which could otherwise be lost."); *accord M/V Allegra*, 198 F.3d at 485 ("Rule 27 is not a substitute for broad discov-ery, nor is it designed as a means of ascertaining facts for drafting a complaint.") (citations omitted); *see also United States v. Cuya*, 964 F.3d 969, 973 & n.4 (11th Cir. 2020) ("in civil cases generally, a party is not entitled to discovery before an action is brought—indeed, he may not seek discovery until after he has not only filed a complaint, but a well-pleaded one") (collecting cases).

Qin faces an obvious obstacle to pursuing relief in federal court, and the dilemma posed by the non-corporate associa-tion whose members (and their citizenship) the plaintiff can-not ascertain despite reasonable investigatory efforts has been noted and discussed elsewhere. *See Lincoln Benefit Life Co.*, 800

F.3d at 102, 107–08; *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087–88 (9th Cir. 2014); *cf. Med. Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010); *In re Ingenuity 13 LLC*, 2012 WL 968080, at *4–*6 (E.D. Cal. Mar. 21, 2012) (magistrate judge), *reconsideration denied*, 2012 WL 1414076 (E.D. Cal. Apr. 20, 2012) (district judge). But in asking us to explore how he might surmount that obstacle, Qin is asking for us to issue an advisory opinion. That is beyond our power. *See Jones v. Griffith*, 870 F.2d 1363, 1366 (7th Cir. 1989) ("Federal courts are not authorized to render advice to persons contemplating litigation or acts that may lead to litigation.") (collecting cases). The sole issue before us is whether Qin's invocation of Rule 27 was proper, and we have concluded that it was not.

## III.

As Qin's petition does not establish that he is seeking to perpetuate testimony that may otherwise become unavailable to him, and that is relevant to a matter cognizable in federal court, we AFFIRM the denial of Qin's Rule 27 petition.